## Case No. 13,345.

### In re STEELE et al.

[7 Biss. 504;[1] 16 N. B. R. 105.]

District Court, E. D. Wisconsin. July, 1877.

BANKRUPTCY — VALIDITY OF LEVY — ATTACHMENTS — LIEN — PRIORITIES.

1. Where an attachment upon property of the bankrupt for its full value is dissolved by an adjudication, a judgment creditor who has made a levy subject to such attachment is not entitled to priority as against the assignee.

[Cited in Re Nelson. Case No. 10,100; Claridge v. Kulmer. 1 Fed. 402.]

2. But where a creditor has obtained a valid and effectual lien by attachment, and has prosecuted his suit to judgment, and made an execution levy, his lien under such levy is to be considered as prior in time to that of other creditors who have levied attachments intermediate the attachment and execution levy of such creditor, and is not affected by the dissolution of such attachments.

[In the matter of Roscoe R. Steele and others, bankrupts.]

Mr. Pereles, for petitioners.

Jenkins, Elliot & Winkler and Mr. Noyes, for assignee.

DYER. District Judge. The petitioners, S. A. Field, and Blair & Persons, who are creditors of the bankrupts, apply for an order directing the assignee to pay to them the amount of certain judgments, recovered by them against the bankrupts before the bankruptcy, and upon which judgments they claim that they obtained, by virtue of execution levies, liens upon certain property. The facts necessary to consider are these:

On the 3d day of January, 1877, John Bromley and others. creditors of the bankrupts. commenced suit against their debtors in the circuit court of Milwaukee county, to recover the sum of three hundred and nineteen dollars and thirty-five cents and interest, and attached a certain stock of goods belonging to the bankrupts. On the same day Henry Newberger and others commenced suit by attachment in the state court against the bankrupts to recover the sum of one thousand three hundred and twenty-eight dollars and five cents and interest. and attached the same stock of goods attached in the action before named. On the same 3d day of January, the petitioner. Samuel A. Field, commenced an attachment suit against the bankrupts before a justice of the peace, to recover about the sum of two hundred dollars, and attempted to attach the same goods. subject, however, to the two attachments before mentioned, which were prior in time. On the fourth day of the same month, the petitioners, Blair & Persons, commenced an attachment suit against the bankrupts before a justice of the peace, to recover about the sum of seventy-five dollars, and attached said stock, subject to said prior attachments. On the 5th day of January, Enoch R. Artman and others, creditors of the bankrupts, commenced an attachment suit against them in the circuit court of Milwaukee county, to recover the sum of two thousand one hundred and ninety-two dollars and sixty-two cents and interest. and attached the same property, subject to the prior seizures.

According to an inventory and appraisal made by the officer under the first attachments, the entire stock of goods attached in all the cases was of the value of two thousand four hundred and fifty-eight dollars and one cent. Facts disclosed by the affidavits show that, in the suit brought by the petitioner Field, no valid seizure under the attachment issued in that case was made, but on the 18th day of January, 1877, judgment was obtained for two hundred and sixteen dollars and twenty-nine cents. and execution was on the same day issued, and levy under the execution upon said stock was made, subject to the prior attachments. Judgment was also rendered January 11th, in the action commenced by the petitioners, Blair & Persons, for the sum of seventy-six dollars and fifteen cents. and execution was issued on the same day. and levy made, subject to the lien of prior attachments. There is no evidence that these judgments were obtained, or the execution levies made, by any collusion with the debtors. Judgments were never obtained in the actions commenced respectively by Bromley et al.. Newberger et al., and Artman et al.; but subsequently, and within four months subsequent to the 3d day of January, when the first attachment was issued, bankruptcy proceedings were instituted against Steele & Rolf, and they were adjudged bankrupts, and an assignee was chosen. On the 8th day of February, 1877, the sheriff holding the stock of goods under the attachments and execution levies made a general surrender of possession of the goods to the assignee, excepting a certain portion set apart under the levies upon execution made in favor of petitioners, Field and Blair

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

& Persons, and which portion, when so set apart, it would seem was left with the assignee as custodian, under an agreement that it was to be re-delivered on demand, or that the assignee would pay the amount of the executions.

Upon this state of facts, petitioners claim that they are entitled to be paid the amount of their judgments in full.

The three attachments pending at the time of the adjudication in bankruptcy were dissolved by operation of law. Inasmuch as no valid seizure under attachment was made in the action brought by the petitioner Field, he acquired no lien upon the property, until his execution levy, January 18th, if indeed any was then acquired. The levy then made was necessarily subject to the attachments in favor of Bromley, Newberger, and Artman, which were prior in time, to say nothing of the attachment in favor of Blair & Persons. The value of the entire property attached being two thousand four hundred and fifty-eight dollars and one cent, and the demands in favor of Bromley, Newberger, and Artman, amounting in the aggregate to three thousand eight hundred and forty dollars and two cents, it appears that, at the time of the execution levy by Field, the entire value of the property was covered by demands, to secure which the three prior attachments before named were issued. In other words, all the right which the petitioner Field acquired was by a levy on property already subject to attachments to its full value. The question, then, is, did the dissolution of the prior attachments inure to the benefit of the judgment creditor, and can he be let in to claim priority as against the assignee in bankruptcy?

Upon this question the courts have not been silent; and without extended discussion it may be determined upon a brief review of the decisions.

In the Case of Klancke [Case No. 7,864], the property of the bankrupt was seized upon attachment. After the levy of the attachment, judgments were obtained by other creditors and executions were issued and levied upon the property previously attached. The amount of the prior attachment exceeded the gross amount of the property; and the property having been converted into money, and bankruptcy proceedings having been commenced against the debtor, the judgment creditors applied for payment in full, claiming that the attachments having been discharged, and they having a bona fide levy under their executions before the filing of the petition in bankruptcy, the lien of their executions was saved, and that they were entitled to preference. Judge Benedict denied the application, holding that the provisions of the act for preserving existing securities do not indicate any intention to improve the condition of any creditor or create new rights; that all the right which the judgment creditors acquired was by a levy on property already subject to an attachment to its full value, and that such a levy gave the judgment creditors no security, and did not entitle them to apply to the court for a payment of their judgments in full out of the proceeds of the estate.

The case of Johnson v. Rogers [Case No. 7,408], was one where the bankrupts had executed a general assignment of all their property for the benefit of creditors. Subsequently certain creditors commenced actions and recovered judgments which were claimed to be liens upon real estate. Bankruptcy followed, and a contest arose between the assignee in bankruptcy and the judgment creditors respecting the validity of the liens asserted by these creditors. And although Judge Wallace holds that, if an assignment is void as intended to hinder creditors, a creditor may obtain a lien upon the real estate by getting a judgment against the debtor, and upon the personal property by the levy of an execution thereon, and that such liens will be valid as against the assignee in bankruptcy if they are obtained before the commencement of the bankruptcy proceedings. he nevertheless lays down this proposition in his opinion: "If the assignment had been void only because contrary to the provisions of the bankrupt act [of 1867 (14 Stat. 517)], and the assignee in bankruptcy had obtained a decree setting it aside upon this ground, the judgments of the several creditors would not have been liens upon the real estate; as against these judgments the assignment would have been effectual to transfer the title to the original assignees. If these creditors had no liens prior to the commencement of the proceedings in bankruptcy they would acquire none thereafter, and the assignee in bankruptcy would take the property as it was at the commencement of the proceedings, for distribution to all the creditors of the bankrupt, in conformity with the terms of the bankrupt act."

The Case of Beisenthal [Case No. 1,236]. determined in the circuit court of the United States for the Northern district of New York, was also one of voluntary assignment of property for the benefit of creditors without preference. Afterwards, creditors recovered judgments and issued executions by virtue of which levies upon personal property were made. Subsequently, bankruptcy proceedings were commenced against the assignors, and the question was, whether the assignee in bankruptcy was entitled to the proceeds of the property to the exclusion of the execution creditors' claim of priority. The assignment made by the bankrupts was not made to hinder, delay, or defraud creditors, but was held void under the bankrupt law against the assignee in bankruptcy; and Judge Johnson holds that, upon avoidance of the assignment by the assignee in bankruptcy, judgment creditors who had levied upon the property, after the assignment and before the commencement of the proceedings

in bankruptcy, have no priority over the assignee. He says: "When the assignee recovers the property, he takes it as the debtor had it at the time of the act which the assignee avoids, so far as creditors of the debtor are concerned. Avoiding the transfer in favor of the assignee in bankruptcy does not revest the property in the debtor, but vests it directly in the assignee, who takes it by virtue of the statute. The transfer by the debtor, good against him and good against his creditors, prevents any lien by subsequent judgment or execution. Upon the property so situated the statutory transfer to the assignee in bankruptcy operates directly, and cannot be subjected to the liens of intervening judgments and executions without overthrowing both the language and the policy of the bankrupt law in its most vital provisions."

In the Case of Badenheim [Case No. 716], it was held that where the property of the bankrupt had been attached, and other creditors had subsequently obtained a judgment under which an execution levy of the same property was made, and bankruptcy proceedings followed, by virtue of which the attachment was dissolved, the seizure under the attachment held the property free from the lien under the execution up to the dissolution of the attachment by the bankruptcy proceedings, so that there was no time at which the lien under the execution could attach.

While perhaps the reasoning in the last-mentioned case is liable to be questioned, the general principles laid down in the cases referred to seem to be sound. It is not to be overlooked that we are dealing with a case where the prior attachments embrace demands sufficient in amount to exhaust the entire value of the attached property. If those attachments were to stand untraversed and unaffected by the bankruptcy proceedings, the judgment creditor now claiming priority would get nothing. The attachments being dissolved as a consequence of the bankruptcy proceedings, to permit a subsequent judgment creditor to intercept the fruits of avoiding the attachments, and thus prevent equal distribution, in the language of Judge Johnson, "would subvert the whole laudable purpose of the bankrupt act so far as creditors are concerned." The analogy in this respect between the case of an attachment and that of an assignment for the benefit of creditors is apparent, and the same principles may be invoked in determining the rights of parties in both cases.

Both the assignment and the attachment are good against the debtor and against his creditors. Both are avoided only by operation of law. No more in one case than in the other where the entire property is exhausted by the attachment, or covered by the assignment, can intervening judgments and executions secure to particular creditors, liens which have priority against the assignee in

bankruptcy. Attachments issued within a limited period before the commencement of bankruptcy proceedings are dissolved by the bankrupt law for the benefit of all creditors, and not for the benefit of a few; and it was not intended by the law to bestow upon particular creditors new or better rights, as the result of the avoidance of such attachments.

It should be observed, that in the case of MacDonald v. Moore [Case No. 8,763], Judge Blatchford held that when an assignment is set aside at the suit of an assignee in bankruptcy, a creditor who levied on the property assigned, before the commencement of the proceedings in bankruptcy, and after the execution of the assignment, is entitled to priority. The ruling in this case, as will be seen, is not in accord with the other cases cited, and though the supreme court of the United States has strongly enunciated the principles upon which, under the bankrupt law, the rights of judgment creditors are to be determined (Wilson v. City Bank [17 Wall. (84 U. S.) 473], cited by Judge Blatchford), it seems irreconcilable with a just administration of the law to hold that where the property of a debtor has been attached to its full value, and where a subsequent judgment creditor makes a levy upon the same property, that such creditor gets a security which, upon dissolution of the attachment by reason of bankruptcy proceedings, gives him priority.

The position of the case of the petitioners Blair & Persons is different. They made an effectual and valid levy by attachment on the 4th day of January, 1877. Their attachment was subject only to the attachments in favor of Bromley et al., and Newberger et al. The aggregate amount of the demands in those two cases was one thousand six hundred and forty-seven dollars and forty cents. This did not exhaust the full value of the attached property, but left a surplus of eight hundred and ten dollars and tixty-one cents, upon which Blair & Persons could acquire an effectual lien. Holding their attachment levy, they prosecuted their suit to judgment and made execution levy, which was in force when bankruptcy proceedings were commenced. It is true that, intermediate their attachment and execution levy, other creditors—Artman et al.,—commenced suit by attachment against the bankrupts, and made seizure of the property, which seizure was in force at the time of the execution levy by Blair & Persons. But the right or lien acquired by Blair & Persons by virtue of their attachment was prior in time, and its priority as to the surplus of the property over and above the attachments of Bromley and Newberger continued to time of judgment, and was preserved in the execution levy. Blair & Persons were then in the position of judgment creditors, holding, at the time bankruptcy proceedings were commenced, an effectual lien by bona fide execution levy on property more than sufficient

to pay their demand and also the demands of prior attaching creditors. The dissolution of the attachments in the then pending actions by operation of the bankrupt law did not improve their condition or extend their rights. They occupied the same position after the discharge of the attachments that they held before, and their lien must be recognized.

The application for payment of the judgment in favor of Field will be denied. and that in favor of Blair & Persons will be granted.